# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| SONJA P. JOHNSON, | |
| **Plaintiff,** | |
| *vs.* | CAUSE NO.  1:14-cv-618-SEB-DKL |
| CAROLYN W. COLVIN, **Commissioner of Social Security,** | |
| **Defendant.** | |

## REPORT AND RECOMMENDATION

On August 30, 2011, plaintiff Sonja P. Johnson applied for Disability Insurance Benefits ("DIB") under Title II and Supplementary Security Income ("SSI") under Title XVI of the Social Security Act.  She alleges a disability onset date of August 1, 2011.  Her applications were denied initially and again upon reconsideration.  After a hearing, an administrative law judge ("ALJ") of the Social Security Administration also denied her applications.  That became the final decision of the defendant Commissioner of Social Security when her Appeals Council denied Ms. Johnson's request for review.  Ms. Johnson brought this suit for judicial review of the final decision of the Commissioner. The district judge referred this Cause to this magistrate judge for preparation of a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  *Order Referring Issues to Magistrate Judge* [doc. 14].

**Standards**

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. ' 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004).  This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While review of the Commissioner=s factual findings is deferential, review of her legal conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ' 416.905(a).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. ' § 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments

are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling.  20 C.F.R. ' 404.1525.  If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. ' 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995,

1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.  Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist.  If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts.  If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1]  An applicant who is dissatisfied with the decision of

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration.  20 C.F.R. Part 404, Subpart Q (' 404.1601, *et seq.*).

the ALJ may request the SSA's Appeals Council to review the decision.  If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review.  42 U.S.C. ' 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

Ms. Johnson alleges that she is disabled as a result of costochondritis, ganglion cyst in her left knee, pleurisy, hypertension, anemia, sickle cell, breast cysts, bipolar disorder, anxiety, post- traumatic-stress disorder, bereavement, borderline personality disorder, depression, and alcohol abuse in early remission.  She alleges that she is unable to stand or sit for more than ten minutes, to walk more than one-half block, and to lift more than ten pounds.  Due to her knee pain and  shortness of breath, she allegedly experiences problems with kneeling,  bending over, and using stairs.  She alleges that she must take rest breaks every ten minutes and has to lie down all day as a result of her impairments. (R. 17.)  Ms. Johnson was 42 years old on her alleged onset date.  She has a high-school education and is able to communicate in English.  Her past work history includes working as a bus monitor once a week.

---

Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

At step one of the sequential evaluation process, the ALJ found that Ms. Johnson did not engage in  substantial gainful activity after her alleged onset date.  At step two, he found that she has the severe impairments of costochondritis, ganglion cyst in her left knee, bipolar disorder, post-traumatic-stress disorder, bereavement, borderline personality disorder, and alcohol abuse in early remission.  He did not find that Ms. Johnson's alleged pleurisy, hypertension, anemia, sickle cell, and breast cysts were severe impairments.  He found that the record contained normal chest x-rays and a normal lung examination by a consultative examiner, with no  indication of pleurisy.  He found no evidence of end-organ disease for hypertension.  He found that reports indicated that Ms. Johnson's anemia improved with treatment and there was no mention of sickle cell in the record.  Last, he found that her breast cysts were likely to  resolve with treatment.  At step three, the ALJ evaluated Ms. Johnson's costochondritis and chest-wall  pain under Listing 3.00 (respiratory), her knee impairment under Listing  1.02 (major dysfunction of joints), and her mental impairments under  Listings 12.04, 12.06, 12.08, and 12.09.  He found that her impairments, severe and non-severe, singly and in combination, did not meet or medically equal any of these Listings.

The ALJ determined that Ms. Johnson has the RFC to perform light work with these additional restrictions:  (1) only occasional bending, stooping, balancing, crouching, kneeling, crawling, and climbing;  (2) only "simple, repetitive tasks  requiring no independent judgment regarding basic work processes"; (3) daily work goals should be

"static" and "predictable"; and (4) no contact with the general public and only superficial contact with co-workers.  (R. 16.)   The ALJ found that Ms. Johnson's allegations of disabling pain and other symptoms, or of  disabling functional limitations were not entirely credible.  (R. 21.)

At step four, the ALJ found that Ms. Johnson is unable to perform any of her past relevant work.  At step five, he found that she is able to perform jobs that exist in significant numbers in the national economy based on her age, education, work experience, and RFC.

## Discussion

Ms. Johnson contends the ALJ decision contained four errors.

1.  **Failure to consider evidence.**   Ms. Johnson argues that the ALJ ignored findings that would support a disability determination.[2]  She contends that the ALJ ignored the May 15, 2012 evaluation by Dr. Mayrose, a psychiatrist at Midtown Community Mental Health; Dr. Mayrose's  medication review of June 26, 2012; and the findings from Ms. Johnson's emergency-room visit  on August 24, 2012.  An ALJ is not required to mention or explicitly address every report and item of evidence or every piece of content in every report and item of evidence.  While he must consider all of the

---

[2] Although Ms. Johnson labels this as a step-three substantial-evidence argument, she actually argues that the ALJ ignored evidence, which is a legal error.

evidence of record, he is required to discuss only the "significant evidence contrary to his ruling." *McBride v. Massanari*, 169 F.Supp.2d 857, 862 (N.D. Ill. 2001). The Court concludes that the ALJ considered all of the evidence and Ms. Johnson has failed to develop any argument that the evidence she cites as overlooked required specific address by the ALJ.

The ALJ's decision includes discussion of Ms. Johnson's counseling and therapy sessions at Midtown from April 2012 through July 2012. He discussed Ms. Johnson's mental diagnoses including post-traumatic-stress disorder, bereavement, borderline personality disorder, and alcohol abuse. (R. 14.) He also discussed her Global Assessment of Functioning ("GAF") score, which was assessed by Dr. Mayrose on May 15, 2012, (*id.*),which indicates that the ALJ was aware of and considered the medical evidence from Ms. Johnson's visit with Dr. Mayrose. Moreover, the ALJ's consideration of Dr. Mayrose's medical review is shown by his discussion of Ms. Johnson's medication management while she was being seen at Midtown.

Ms. Johnson also argues that the ALJ only selectively considered evidence relating to her visit to the emergency room on August 24, 2012 — specifically, he failed to consider the observations of her anxious appearance. But the ALJ wrote that Ms. Johnson "did seek treatment for an anxiety attack in August 2012." (*Id.*) In addition, he stated in his decision that she, in fact, suffered from a panic attack during her visit to the emergency room. (R. 19.) The hospital physicians recorded their diagnoses based on their

9

observations, including her anxious appearance, and the ALJ consideration of these reports and observations is shown by his noting that Ms. Johnson has been treated for anxiety and a panic attack.

In addition, Ms. Johnson does not show how these findings would have change the ALJ's decision to deny her disability benefits.  She has simply provided the Court with a recitation of items of record evidence that the ALJ did not explicitly mention in his decision.  She has failed to connect these items with her claims or disability standards to form an argument.  It is not the Court's role to construct legal or factual arguments for the parties.  *John v. Barron*, 897 F. 2d 1387, 1393 (7the Cir. 1990).  Therefore, Ms. Johnson's argument is forfeited.

**2.  Failure to call a medical advisor.**  Ms. Johnson argues that the ALJ  committed reversible error by failing to call a medical advisor to opine whether her  combined anxiety and depression impairments medically equal a listing.  She contends that the ALJ determined that her impairments did not medically equal a listing based solely on his "layperson's opinion."  (*Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 21] ("*Brief*"), at 15.)  An ALJ "plays doctor" when he relies on his own medical conclusions.  *Scott v. Colvin*, No. 1:13-cv-91-SEB-MJD, 2014 WL 32389 (S.D. Ind., Jan. 6, 2014).

The Court concludes that the ALJ did not err because he relied on the opinions of the two state-agency physicians who reviewed the record, rather than his own medical

10

judgment.  Ms. Johnson argues that these opinions are not reliable because the physicians did not consider all of the evidence in the record.  Specifically, she argues that they failed to consider the evidence of (1) her psychotherapy session on Aril 23, 2012; (2) her group-therapy session on May 3, 2012; (3) Dr. Mayrose's evaluation of May  15, 2015; (4) Dr. Mayrose's medication review of June 26, 2012; and (5) her treatment for  anxiety and panic attack on August 24, 2012.  She contends that the state-agency physicians' opinions would have been different if this evidence had been considered.   She cites *Graves v. Astrue*, No. 1:11-cv-249-SEB-DKL, *Entry Discussion Complaint for Judicial Review*, 2012 WL 4019533, 2012 U.S.Dist.LEXIS 129985 (S.D. Ind., Sept. 11, 2012), which held that "an ALJ is required to obtain an updated opinion of a medical expert when 'additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.'" *Id.*, 2014 WL 4019533, * 3 (citing S.S.R. 96-6p).

Ms. Johnson has failed to explain or show how the items of evidence that she cites impact the disability determination, how their consideration might change the opinions of the state-agency physicians on Listings satisfaction and, thus, the ALJ's determination of disability.   Instead, she merely lists items of evidence and makes a conclusory statement that they are significant.  Courts will not remand a claim to the Commissioner

without a showing that it might lead to a different result.  Therefore, the Court concludes that Ms. Johnson has not shown error by the ALJ.

**3. Credibility determination.**  Ms. Johnson argues that the  ALJ's credibility determination was patently erroneous because it was illogical and "backwards".  A court will not overturn an ALJ's credibility determination unless it is patently wrong.  *Curtis v. Astrue*, 623 F.Supp.2d 957 (S.D. Ind. 2009).  An ALJ is required "to articulate specific reasons for discounting a claimant's testimony as being less than credible."  *Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005).  An ALJ fulfills this articulation duty if a court is able to trace the path of his reasoning.  *Id*, at 747.

Ms. Johnson argues that the ALJ's use of boilerplate language in his credibility determination is erroneous.  In *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir.  2012), the court held that the use of boilerplate language does not warrant a reversal or  remand of a claim if the ALJ offered reasons for his credibility determination that are grounded in the evidence, in which case, the use of boilerplate language is deemed harmless.  *Id.*  In this case, while the ALJ used some boilerplate language, he also cited substantial  evidence in support of his determination.  The ALJ discussed eight factors in assessing Ms. Johnson's credibility and cited specific evidence in the record in support of each.  The Court can trace the path of his reasoning.  Therefore, the Court concludes that Ms. Johnson has not shown that the ALJ erred in his credibility determination.

**4. Erroneous step-five determination.**  Ms. Johnson argues that the ALJ's step-five determination is erroneous because  he failed to consider all of her impairments.  She contends that the ALJ's RFC assessment failed to  account for her anxiety, depression, and other moderate impairments in her "social  functioning [and] concentration, persistence or pace."  (*Plaintiff's Brief*, at 22.)  Again, Ms.  Johnson has failed to develop her argument.  "An undeveloped argument is a  waived argument."  *Buford v. Astrue*, No. 3:09-cv-342 CAN, *Opinion and Order*, 2010 U.S. Dist. Lexis 78336, 2010 WL 3075015, *8 (N.D. Ind., Aug. 2, 2010).

Ms. Johnson argues that the ALJ erroneously only limited her to "simple, repetitive tasks."  (*Plaintiff's Brief*, at 22.)  The Commissioner responds that Ms. Johnson does not show how specific evidence in the record required additional RFC limitations, (*Response* at 7), and the Court agrees.  The ALJ's RFC accommodated Ms. Johnson's mental impairments by limiting her to work that involves "simple, repetitive tasks requiring no independent judgment."  (R. at 16.)  Ms. Johnson argues that the ALJ's RFC fails to mention her anxiety or her inability to  control her anger, which prevents her from having any contact with the general public and, thus, prevents the performance of a significant number of jobs.  The ALJ found that Ms. Johnson was limited to only "superficial contact with co-workers and no contact  with the general public", (*id.*), and the vocational expert identified three  jobs that accommodated this limitation:  housekeeper, office machine operator, and non-post-office mail clerks.   Ms. Johnson has not shown error by the ALJ.

## Recommendation

This magistrate judge recommends that the Commissioner's denial of Ms. Johnson's claims for disability benefits be **AFFIRMED**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:**  08/07/2015


_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana


Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.

14